1

2           **E-Filed 3/27/07**

3

4

5

6

7                           NOT FOR CITATION

8            IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12  U2 HOME ENTERTAINMENT, INC., et al.,      Case Number C 05-260 JF (PVT)

13              Plaintiffs,                    ORDER[1] (1) DENYING PLAINTIFF
                                               U2'S MOTION FOR SUMMARY
14          v.                                 JUDGMENT; (2) GRANTING IN
                                               PART AND DENYING IN PART
15  GATECHINA.COM, INC., et al.,               DEFENDANT UNITOPIA'S MOTION
                                               FOR SUMMARY JUDGMENT; AND
16              Defendants.                     (3) GRANTING PLAINTIFF U2'S
                                               MOTION FOR LEAVE TO AMEND
17
                                               [RE: Doc. Nos. 137, 140, 144]
18

19

20        Plaintiff U2 Home Entertainment, Inc. ("U2") and Defendant Unitopia Corporation

21  ("Unitopia") have filed cross-motions for summary judgment and/or partial summary judgment.

22  U2 also has filed a motion for leave to amend its pleading to add new claims against Unitopia

23  and to add new defendants.  The Court has considered the briefing as well as the oral arguments

24  presented at the hearing on July 7, 2006.  For the reasons discussed below, U2's motion for

25  summary judgment will be denied, Unitopia's motion for summary judgment will be granted in

26  part and denied in part, and U2's motion for leave to amend will be granted.

27  _____

28        [1] This disposition is not designated for publication and may not be cited.

1

### I. BACKGROUND

2      U2, a California corporation, owns the copyrights and/or the exclusive United States

3 distribution rights to certain Chinese language videos.  In August 2002, U2 sued Wayne Lin

4 ("Lin") and his corporation, Gatechina, Inc.[2] ("Gatechina"), for copyright infringement and

5 related claims arising out of activity on a website known as tigercool.com.  The website

6 tigercool.com was launched by Lin and another individual, Lei Lei ("Lei"), in 2001, and offers

7 goods and services designed to appeal to ethnic Chinese consumers around the world.  For

8 example, a user of tigercool.com can order flowers for delivery in China, acquire telephone cards

9 for use in calling China, and obtain Chinese language books and visual media.  U2 alleged that

10 the visual media products offered by tigercool.com included works to which U2 owned the

11 copyrights or distribution rights.  That action – Case No. C 02-3792 JF (PVT) – settled, and this

12 Court entered a stipulated Final Judgment, Consent Decree and Permanent Injunction.

13      In October 2004, U2 became aware that tigercool.com again was selling copies of works

14 to which U2 owned the copyrights or distribution rights.  U2's agent purchased four of these

15 works, "Dry Wood Fierce Fire," "The Legendary Four Aces," "Twin of Brothers," and "Hidden

16 Treasures."  The first two of these works were specifically listed in an exhibit to the stipulated

17 final judgment in the earlier action.  In January 2005, U2 filed an application for an order to show

18 cause why Lin and Gatechina should not be held in contempt of the stipulated final judgment in

19 Case No. C 02-3792 JF (PVT).  U2 also filed the instant action, Case No. C 05-260 JF (PVT),

20 against Lin, Gatechina, Lei, and two business entities, Unitopia and Unitopia Xian Corporation.

21 Upon being informed by Lin's counsel that Lin and Gatechina no longer had any association with

22 the tigercool.com website, U2 withdrew its application for contempt sanctions and dismissed Lin

23 and Gatechina from the instant action.[3]  Neither Lei nor Unitopia Xian Corporation have

24 appeared in the instant action, and default judgment has been entered against them.

25

26      [2] Formerly known as Gatechina.com, Inc.

27      [3] The Court subsequently granted in part U2's renewed application for contempt sanctions
against Lin and Gatechina based upon their continued advertisement of the tigercool.com
28 website.

2

1    The motions currently before the Court arise out of U2's claims against Unitopia in the

2    instant action.  Unitopia is a Delaware corporation run by Lei's sister, Leisa Lei ("Leisa"), and

3    her husband, Pei Chin ("Chin"), who live in El Cerrito, California.  When Lei took over the

4    tigercool.com website, he asked Leisa and Chin whether Unitopia would provide administrative

5    assistance with credit card and bank-related services in the United States.  Leisa and Chin agreed,

6    and Unitopia entered into an eCommerce Agent Agreement dated January 1, 2004.  Unitopia

7    established a post office box to handle correspondence and billing regarding tigercool.com;

8    assisted tigercool.com in opening a UPS account; established merchant accounts such as Visa

9    and Mastercard to process credit card payments to tigercool.com; deposited customer checks

10   made out to tigercool.com; managed tigercool.com's accounts payable by paying bills for

11   shipping and advertising; and remitted monies to tigercool.com.

12       U2's operative first amended complaint ("FAC") alleges four claims against Unitopia[4]:

13   two claims for copyright infringement, a claim for false designation of origin under the Lanham

14   Act, and a claim for common law unfair competition.  U2 seeks to add claims against Unitopia

15   for fraudulent transfer and conspiracy to commit fraudulent transfer, and to add claims against

16   new defendants.

## II. CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A.    Legal Standard

19       A motion for summary judgment should be granted if there is no genuine issue of

20   material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

21   56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears

22   the initial burden of informing the Court of the basis for the motion and identifying the portions

23   of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that

24   demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

25   317, 323 (1986).

26   ─────────────────

27       [4] The FAC actually does not specify that these claims are asserted against Unitopia, but
     states only that they are alleged against Gatechina's "successors in interest."  However, it appears
28   clear from the briefing that U2 is pursuing all of these claims against Unitopia.

1     If the moving party meets this initial burden, the burden shifts to the non-moving party to

2  present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e);

3  *Celotex*, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents

4  evidence from which a reasonable jury, viewing the evidence in the light most favorable to that

5  party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49;

6  *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).

7  **B.   Copyright Claims**

8     U2's first two claims for copyright infringement are virtually identical. Claim 1 alleges

9  that U2 is the exclusive licensee for distribution of particular works in the United States,

10  including "Dry Wood Fierce Fire." Claim 2 alleges that U2 owns the copyrights of particular

11  works, including "Twin of Brothers," "The Legendary Four Aces" and "Hidden Treasures."

12  Both claims allege that these works were ordered on the tigercool.com website and thereafter

13  shipped to the United States from China in violation of 17 U.S.C. §§ 106 and 602(a). Section

14  106 grants to a copyright owner a number of exclusive rights, including the right to distribute

15  copyrighted works. Section 602(a) provides in relevant part as follows:

16       (a) Importation into the United States, without the authority of the owner of
          copyright under this title, of copies or phonorecords of a work that have been
17      acquired outside the United States is an infringement of the exclusive right to
          distribute copies or phonorecords under section 106, actionable under section 501.
18      This subsection does not apply to --

19                           *****

20       (2) importation, for the private use of the importer and not for
          distribution, by any person with respect to no more than one copy
21      or phonorecord of any one work at any one time, or by any person
          arriving from outside the United States with respect to copies or
22      phonorecords forming part of such person's personal baggage;

23  17 U.S.C. § 602(a). U2 seeks summary judgment that unauthorized copies of works to which U2

24  has exclusive rights were imported into the United States in violation of § 602(a), and that

25  Unitopia is contributorily and vicariously liable for such infringement. Unitopia seeks summary

26  judgment that no copyright infringement has occurred, and that even if infringement has occurred

27  Unitopia cannot be held contributorily or vicariously liable.

28      **1.    Whether There Has Been Copyright Infringement**

4

1    The Court concludes that there are triable issues of material fact as to whether copyright

2    infringement has occurred.  U2 presents undisputed evidence that it holds the exclusive rights to

3    the works at issue.  However, as Unitopia points out, the only evidence of importation is the

4    delivery of a single copy of each of four works to U2's agent.  The Court is not persuaded that

5    liability can be premised on those importations alone, because they were made at the direction of

6    U2, the copyright holder, and § 602 imposes liability only upon importations "without the

7    authority of the owner of copyright."[5]  However, the fact that U2's agent was able to order

8    protected works on the tigercool.com website and obtain delivery of those works from China to

9    the United States gives rise to a reasonable inference that the tigercool.com website has engaged

10   in delivery of those and other copyrighted works into the United States in violation of U2's rights.

11   Unitopia argues that because only a single copy of each work was delivered to U2's agent,

12   the personal use exception set forth at § 602(a)(2) applies.  It is not clear from the record whether

13   other United States customers have purchased multiple copies of protected works from the

14   tigercool.com website.  If so, then the exception at § 602(a)(2) does not even arguably apply.

15   Moreover, the Court concludes that on these facts, the exception at § 602(a)(2) does not apply

16   even to single-copy sales of protected works by tigercool.com.  When a company systematically

17   imports works into the United States for commercial profit without permission of the copyright

18   owner, it is difficult to discern why it should matter whether that company sells a single copy of a

19   protected work to each of ten people, or sells ten copies of the protected work to the same person.

20   In either case, the company is profiting from sale of the works into the United States without the

21   consent of the copyright owner.

22   ─────────────

23        [5] U2 cites an unpublished case from the Southern District of New York, *U2 Home

24   *Entertainment, Inc. v. Lai Ying Music & Video Trading, Inc.*, 2005 WL 1231645 (S.D.N.Y. May
     25, 2005), for the proposition that liability may be premised solely on its agent's purchase of

25   protected works.  Even if that case were binding upon this Court, which it is not, it is factually
     distinguishable.  In the cited case, the district court found infringement of a number of works to

26   which U2 held the exclusive rights.  Some of the works were seized by the United States
     Marshal's Service, while others were purchased by U2's agents.  However, while the works

27   seized by U2's agents clearly were taken into account in awarding damages, those works were

28   considered as part of the record as a whole; liability and damages were *not* imposed solely on the
     basis of works purchased by the copyright holder's agents.

Case No. C 05-260 JF (PVT)
ORDER (1) DENYING PLAINTIFF U2'S MOTION FOR SUMMARY JUDGMENT ETC.
(JFLC2)

1    Unitopia argues that the above analysis is flawed, because § 602(a) imposes liability only

2    upon an "importer," and the tigercool.com website is *not* the "importer" in the instant scenario.

3    Unitopia argues that tigercool.com is the "exporter" of the works from China, and that the

4    individual purchaser is the "importer" of the works into the United States.  There does not appear

5    to be any authority directly addressing this issue.  Unitopia cites a United States Customs and

6    Borders Protection website that warns individuals as follows:

7         In other words, "Buyer, Beware."  When you buy goods from foreign sources, you
          become the importer.  And it is the importer in this case, **YOU** -- who is
8         responsible for assuring that the goods comply with a variety of both state and
          federal government import regulations."

9

10   www.customs.ustreas.gov/xp/cgov/import/infrequent_importer_info/internet_purchases.xml.

11   That advice, which is directed to the "Infrequent Importer/Traveler," makes no reference to § 602

12   or to copyright law.  Accordingly, the Court finds the advice of the United States Customs and

13   Borders Protection to be less than persuasive.  Unitopia also relies upon Justice Scalia's

14   concurring and dissenting opinion in *Kmart Corp. v. Cartier, Inc.*, 486 U.S. 281 (1988).  Justice

15   Scalia's opinion is not precedential.  *See United States v. Ameline*, 409 F.3d 1073, 1083 n. 5 (9th

16   Cir. 2005).

17        Other courts have rejected attempts to limit the exclusive distribution rights afforded by

18   §§ 106 and 602(a).  In *Columbia Broadcasting System, Inc. v. Scorpio Music Distributors, Inc.*,

19   569 F.Supp. 47 (E.D. Penn. 1983), the plaintiff, Columbia Broadcasting System ("CBS"), held

20   the exclusive United States copyrights to certain sound recordings.  A Philippines corporation

21   that was licensed to manufacture and sell those sound recordings in the Philippines sold several

22   thousand of those recordings to another Philippines corporation that in turn sold them to a

23   Nevada corporation, International Traders.  International Traders in turn sold the recordings to

24   the defendant, Scorpio Music Distributors, Inc. ("Scorpio").  Scorpio defended against the

25   copyright infringement suit brought by CBS on the theories that, because it purchased the

26   recordings from International Traders within the United States it was not an "importer" within

27   the meaning of § 602(a), and that because the recordings were the subject of a valid first sale

28   between the two Philippines corporations, CBS had lost any rights in the recordings.  *See*

6

1   *Independent News Co. v. Williams*, 293 F.2d 510, 517 (3d Cir. 1961) (holding that when a work

2   is the subject of a valid first sale, the distribution rights of the copyright owner are extinguished).

3   The court held that, regardless of whether Scorpio technically was the "importer," it was

4   "undisputed that Scorpio ordered the records with full knowledge of the importation problem."

5   *Scorpio*, 569 F.Supp. at 48.  The court held that on the facts of the case, it was clear that Scorpio

6   was liable as an infringer, either directly or contributorily or vicariously.  The court held further

7   that to extend the first sale doctrine in the manner argued by Scorpio would render the § 602

8   "virtually meaningless," *id*. at 49, noting that "[t]he copyright owner would be unable to exercise

9   control over copies of the work which entered the American market in competition with copies

10  lawfully manufactured and distributed under this title," *id*. at 49-50.

11       In *T.B. Harms Co. v. JEM Records, Inc.*, 655 F.Supp. 1575 (D.N.J. 1987), the plaintiff

12  owned the copyright in the musical composition "Ol' Man River."  The defendant imported

13  copies of a record containing a recording of "Ol' Man River" from New Zealand into the United

14  States and sold them in this country.  The defendant argued that it had not violated § 602(a),

15  prohibiting importation into the United States in violation of the copyright holder's "exclusive

16  right to distribute" on the ground that even though the plaintiff held the copyright to the work it

17  did not hold the "exclusive" distribution right because the work was subject to compulsory

18  licensing under 17 U.S.C. § 115.  The court rejected the defendant's argument, citing *Scorpio* ans

19  holding that "to allow the defendant to rely on a limitation of the owner's exclusive rights to

20  circumvent the prohibition on importation would tie the hands of the copyright holder who seeks

21  to exercise his rights to control copies of the work which enter the American market." *Id*. at

22  1583.

23       While these cases are not precisely on point, they persuasively articulate the necessity for

24  a broad construction of § 602(a).  To accept arguments such as those proffered by the defendants

25  in *Scorpio* and *T.B. Harms*, and by Unitopia here, would result in the evisceration of the statute.

26  Unitopia argues that the customer who orders a single copy of a work for personal use is just like

27  the traveler who brings home a videotape or dvd in his luggage, the only difference being that the

28  customer did not have to do the actual traveling.  Unitopia ignores the commercial reality that it

7

1  is the entity behind the *website* that systematically holds foreign-manufactured copyrighted

2  works out for sale to United States residents and facilitates the shipment of those works from

3  China to the United States.  Under these circumstances, the Court concludes that Unitopia is an

4  "importer" of the works for purposes of § 602(a).

5        Accordingly, the Court concludes that the acceptance of orders for the works in question

6  by tigercool.com and shipment of those orders to United States customers would constitute

7  copyright infringement.  As noted above, there are triable issues of material fact as to whether

8  any such orders and shipments occurred apart from those solicited by U2's agent.

9        **2.**      **Whether Unitopia May Be Held Liable For Contributory Or Vicarious**

10              **Infringement**

11        U2 asserts that Unitopia is contributorily and vicariously liable for the infringing acts of

12  tigercool.com.  Unitopia argues that, even assuming direct infringement by tigercool.com,

13  Unitopia cannot be held contributorily or vicariously liable.

14        To prove a claim of contributory infringement, a plaintiff must show that the defendant,

15  with knowledge of the infringing activity, "induces, causes or materially contributes to the

16  infringing conduct of another."  *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)

17  (internal quotation marks and citation omitted).  As discussed above, there is a triable issue of

18  material fact as to whether there was direct infringement by tigercool.com.  U2 submits evidence

19  of the close relationship between Unitopia's principals and tigercool.com, additional evidence

20  that Leisa spoke with Lin about his copyright troubles during the pendency of the first suit.

21  While this evidence does not establish actual knowledge of the infringement on the part of

22  Unitopia, the Court concludes that a reasonable inference may be drawn that Unitopia's

23  principals had sufficient knowledge to render Unitopia liable for contributory infringement.

24  Finally, U2 submits evidence that Unitopia made a material contribution to the infringement by

25  establishing merchant accounts such as Visa and Mastercard to process credit card payments to

26  tigercool.com, depositing customer checks made out to tigercool.com, managing tigercool.com's

27  accounts payable, and remitted monies to tigercool.com accounts on behalf of tigercool.com.

28  Accordingly, the Court concludes that triable issues of material fact exist as to whether Unitopia

8

1  is liable for contributory infringement.

2      To prove a claim of vicarious liability, a plaintiff must show that the defendant "enjoys a
3  direct financial benefit from another's infringing activity and has the right and ability to
4  supervise the infringing activity." *Id.* (internal quotation marks and citation omitted).  Unitopia
5  clearly benefitted financially from the sales into the United States by tigercool.com, is it received
6  a percentage of sales.  Moreover, it is clear that Unitopia had at least some right to supervise the
7  infringing activity, as Unitopia controlled the merchant accounts, the UPS account, the post
8  office box and other aspects of the physical delivery of the infringing works to tigercool.com
9  customers.  Accordingly, the Court concludes that triable issues of material fact exist as to
10  whether Unitopia is vicariously liable for copyright infringement.

11      Unitopia relies heavily on *Perfect 10, Inc. v. Visa Int'l Serv. Assoc.*, an unpublished case
12  from this district in which Judge James Ware held that Visa, Mastercard and other credit card
13  companies could not be held liable for contributory or vicarious infringement simply because
14  they provided financial services to the alleged infringers.  This case is factually distinguishable.
15  As noted above, there is evidence of a close familial relationship between the principals of
16  Unitopia and tigercoolcom.  Moreover, Unitopia's activities on behalf of tigercool.com went far
17  beyond the services provided by the credit card companies in *Perfect 10*.  Accordingly, the Court
18  concludes that *Perfect 10* is inapplicable here.

19  **C.    Lanham Act And State Law Unfair Competition Claims**

20      Unitopia argues that U2 impermissibly has recast its copyright claims as Lanham Act and
21  unfair competition claims, citing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S.
22  23 (2003).  In *Dastar*, the Supreme Court held that the Lanham Act does not extend to claims
23  involving the failure to attribute or credit the origin of a creative work.  Here, the thrust of U2's
24  claims is that Unitopia failed to attribute or make clear U2's exclusive distribution rights.  The
25  Court concludes that *Dastar* does indeed bar U2's Lanham Act claims.

26      To the extent that U2 is attempting to assert state law unfair competition claims based
27  upon failure to attribute U2's exclusive distribution rights, any such claims are preempted by 17
28  U.S.C. § 301(a).

9

Finally, it is unclear how *Unitopia* could be held liable for the alleged Lanham Act and state law violations even if such claims were viable.  If any entity could be sued under the Lanham Act and state law, it would appear to be tigercool.com, which offered the works for sale in the United States and shipped the works into the United States.  U2 has not cited any authority for the proposition that a company in Unitopia's position could be held liable under these theories.

## II. MOTION FOR LEAVE TO AMEND

### A.     Legal Standard

A request for leave to amend is governed by Federal Rule of Civil Procedure 15(a), which provides that "leave shall be freely given when justice so requires."  In deciding whether to grant leave to amend, the Court will consider several factors, including:  (1) undue delay by the party seeking the amendment; (2) prejudice to the opposing party; (3) bad faith; (4) futility of amendment; and (5) whether the party previously has amended its pleadings.  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

### B.     Discussion

U2 requests leave to amend to add claims against Unitopia for fraudulent transfer and conspiracy to fraudulently transfer.  These proposed claims appear to be based upon Unitopia's transfers to Lei and his mother of monies totaling $300,000 in proceeds generated from tigercool.com sales after Unitopia was served with the FAC in this action.  It is unclear how the alleged transfers would constitute fraudulent transfers under California law, as there does not appear to be any dispute that the monies belonged to the principals of tigercool.com rather than to the principals of Unitopia.  In other words, it is not as though Unitopia had transferred *its* assets out of the country to avoid payment of damages in this action.  However, as the record is not fully developed, and the precise circumstances of the transfers in question are not known, the Court will grant the motion.  U2 did not delay unduly in seeking to add the proposed fraudulent conveyance claims after discovering the facts giving rise to those claims, and permitting the amendment will not prejudice Unitopia.  There is no evidence of bad faith.  As is noted above, it is unclear whether the fraudulent conveyance claims are viable.  However, the viability of the

10

1   claims easily may be tested by appropriate motion.

2          U2 also seeks leave to add claims against two new parties, Peter Lui and Wang Industries,

3   on the theory that they provided call center support for the tigercool.com website and therefore

4   are contributorily or vicariously liable for the alleged copyright infringement by tigercool.com.

5   The Court concludes that there is no indication of undue delay, prejudice or bad faith.  The

6   claims are not obviously futile.  Accordingly, the Court will allow the proposed amendment to

7   add these two parties.

8                                           **IV. ORDER**

9          (1)      Plaintiff's motion for summary judgment is DENIED;

10         (2)      Defendant's motion for summary judgment is GRANTED IN PART AND

11                   DENIED IN PART.  The motion is GRANTED as to Plaintiff's claims for

12                   violations of the Lanham Act and state law, and DENIED as to Plaintiff's claims

13                   for copyright infringement;

14         (3)      Plaintiff's motion for leave to amend its complaint is GRANTED.

15

16

17   DATED:  3/27/07

18

19                                                      _____
                                                        JEREMY FOGEL
20                                                      United States District Judge

21

22

23

24

25

26

27

28

1   This Order was served on the following persons:

2

3   Alfredo A. Bismonte      abismonte@mount.com, bshih@mount.com; mmcmanus@mount.com

4   Patricia De Fonte      Patricia.DeFonte@idellseitel.com, liz.torres@idellseitel.com;
    richard.idell@idellseitel.com

5

6   Richard J. Idell      richard.idell@idellseitel.com, patricia.defonte@idellseitel.com;
    liz.torres@idellseitel.com; ory.sandel@idellseitel.com

7   Bobby T. Shih      bshih@mount.com, mmcmanus@mount.com

8   Tiffany W. Tai      tai@brtlawyers.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 05-260 JF (PVT)
ORDER (1) DENYING PLAINTIFF U2'S MOTION FOR SUMMARY JUDGMENT ETC.
(JFLC2)